

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-25-00506-CV

**GUANGDONG LVTONG NEW ENERGY ELECTRIC VEHICLE
TECHNOLOGY CO. LTD**,
Appellant

v.

John **MONTAGUE**, and Kimberley Hall and Kirby Stewart, individually
and on behalf of the Estate of Robert Rowton,
Appellees

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2024-CI-09734
Honorable Nicole Garza, Judge Presiding

Opinion by:     Velia J. Meza, Justice

Sitting:        Adrian A. Spears II, Justice
                H. Todd McCray, Justice
                Velia J. Meza, Justice

Delivered and Filed: August 5, 2026

REVERSED AND RENDERED

This interlocutory appeal asks whether Texas courts may exercise personal jurisdiction over Guangdong Lvtong New Energy Electric Vehicle Technology Co., Ltd. (Lvtong), a Chinese manufacturer of golf carts. John Montague and the surviving family of Robert Rowton sued Lvtong for personal injury and wrongful death after a Lvtong-manufactured golf cart tipped over.

Because the evidence is legally insufficient to support personal jurisdiction in Texas, the trial court should have granted Lvtong's special appearance. We reverse and render judgment dismissing the claims against Lvtong.

## BACKGROUND

On March 17, 2024, a golf cart tipped over at Sonterra Country Club in San Antonio, Texas, killing Robert Rowton and severely injuring John Montague. The country club purchased the golf carts from Custom Golf Services, LLC. Prior to the incident, country club personnel reported tipping problems with the cart to Custom, who, in response, sent an employee to test drive one. During that test, the cart tipped over while Montague and Rowton were seated in the back, with tragic results.

Montague and Rowton's surviving family sued the country club, the dealer that sold the cart (Custom), the Custom employee who test drove it, the distributor (ICON EV), and the manufacturer (Lvtong). Lvtong filed a special appearance. After months of jurisdictional discovery, the trial court denied the special appearance. This appeal followed.

## DISCUSSION

A defendant may challenge a plaintiff's jurisdictional allegations by filing a special appearance. *See* TEX. R. CIV. P. 120a. We review a ruling on a special appearance de novo, and where the relevant facts are undisputed—as they are here—we decide only the legal question of whether those facts establish personal jurisdiction in Texas. *BRP-Rotax GmbH & Co. KG v. Shaik*, 716 S.W.3d 98, 103 (Tex. 2025).

The burden of proof on personal jurisdiction shifts between the parties. *Moncrief Oil Int'l v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013). The plaintiff must first plead allegations sufficient to bring the nonresident defendant within the Texas long-arm statute. *Id*. The burden

then shifts to the defendant to negate those allegations—either by disproving them or by showing that, even if true, they are legally insufficient to establish jurisdiction. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010).

The parties agree that Lvtong is not subject to general jurisdiction in Texas and dispute only specific jurisdiction. Lvtong relies on recent Texas Supreme Court decisions adopting a "stream-of-commerce-plus" test in place of the federal "stream of commerce/foreseeability" approach. Montague and the Rowton parties respond that the volume of carts Lvtong shipped to Texas, together with Lvtong's business meetings here, show that Lvtong intended to serve the Texas market. Before reaching that dispute, we first consider whether Lvtong waived its special appearance.

## 1    Waiver

Because a finding of waiver would end our jurisdictional inquiry, we begin there. Rule 120a(1) provides that "any other plea, pleading, or motion may be contained in the same instrument [as the special appearance] or filed subsequent thereto without waiver of such special appearance." TEX. R. CIV. P. 120a(1). A party may also amend a special appearance to cure defects. *Dawson-Austin v. Austin*, 968 S.W.2d 319, 322 (Tex. 1998) (discussing TEX. R. CIV. P. 120a).

After being added to the suit, Lvtong filed its special appearance simultaneously with a motion to quash service and citation. Subsequent motions—a motion to quash a deposition notice and a motion for continuance—each expressly stated that they were filed "subject to, and without waiving, its special appearance." Seven months after its initial special appearance, Lvtong amended it, adding a corrected affidavit. The correction changed the notary block to reflect that the affiant appeared before the notary *remotely* from China, rather than *in person* in Texas.

The Rowton parties argue that the notarial error in the original affidavit was a "false representation" incapable of being cured. They cite no authority for that proposition, and it contradicts the plain text of Rule 120a, which expressly permits amendment to cure defects without distinguishing between formal and substantive errors. *See Dawson-Austin*, 968 S.W.2d at 322 (holding that an unsworn affidavit in an initial filing was cured by subsequent amendment). Each of Lvtong's filings was also expressly made subject to its special appearance and did not constitute a general appearance. *See id*. at 323. We conclude Lvtong did not waive its special appearance and sustain its first issue.

## 2    Specific Jurisdiction

To establish specific jurisdiction, a plaintiff must show that (1) the defendant purposefully availed itself of the privilege of conducting activities in Texas, and (2) the claims arise out of or relate to the defendant's Texas-focused activities. *Hyundam Indus. Co., Ltd. v. Swacina*, 716 S.W.3d 167, 173 (Tex. 2025) (per curiam). The exercise of jurisdiction must also comport with traditional notions of fair play and substantial justice, as due process requires. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 872, 878 (Tex. 2010). In assessing purposeful availment, we look only at the defendant's conduct—not the unilateral activity of another party. *Hyundam*, 716 S.W.3d at 173.

Placing a product into the stream of commerce does not, by itself, establish purposeful availment. This is because a defendant's awareness that its product is sold or distributed in Texas, standing alone, is not enough to establish the minimum contacts necessary to support personal jurisdiction. *Hyundam*, 716 S.W.3d at 173; *see also Luciano v. SprayFoamPolymers.com, LLC*, 625 S.W.3d 1, 13 (Tex. 2021). Instead, the defendant must have engaged in additional conduct

evincing an intent to serve the Texas market. *BRP-Rotax*, 716 S.W.3d at 105. Additional conduct sufficient to show purposeful availment may include designing a product for the Texas market, advertising in Texas, establishing channels for providing regular advice to Texas customers, or marketing the product through a distributor that agrees to serve as a Texas sales agent. *Asahi Metal Indus. Co. v. Super. Ct. of Cal.*, 480 U.S. 102, 112 (1987) (plurality opinion). In the independent-distributor context, the Texas Supreme Court has found purposeful availment where the defendant creates, controls, or employs the distribution system that brings the product into Texas. *BRP-Rotax*, 716 S.W.3d at 105 (quoting *Luciano*, 625 S.W.3d at 10).

### 2.1    Pleadings and initial burden

Montague alleged that "Defendants are either residents of the State of Texas and/or do business in the State of Texas, or both[,] and plaintiff's claims arise out of Defendants' contacts with the State of Texas." The Rowton parties alleged that Lvtong (1) "deliberately targeted the State of Texas for the marketing and sale of the product involved in this case"; (2) "purposefully availed itself of the privilege of doing business in Texas by targeting the subject golf cart for sale in Texas"; (3) the golf cart entered Texas through the stream of commerce; (4) Lvtong shipped the cart "directly to Texas, along with over 600[] other golf carts in the first eight months of 2024 alone"; and (5) Lvtong "targeted Texas residents with their goods and services by virtue of a vast network of authorized dealers in the State of Texas."

We conclude the plaintiffs' allegations that Lvtong committed a tort within Texas satisfy the long-arm statute, shifting the burden to Lvtong to negate the alleged bases for jurisdiction. *Luciano*, 625 S.W.3d at 8 (citing *Moncrief*, 414 S.W.3d at 149).

**2.2    Lvtong's special appearance**

Lvtong's special appearance was supported by an affidavit from Jiangbo Song, its director of international sales, and after it was amended, deposition testimony. Both special appearances asserted that Lvtong manufactures "semifinished" golf carts and sells them to ICON EV—a Florida company—for "final assembly and testing," and that all carts are shipped to a port of ICON EV's choosing. Song's affidavit established that Lvtong has no offices, employees, property, bank accounts, or other presence in Texas; that Lvtong has never registered to transact business in Texas; that the cart involved in this case was designed and manufactured entirely in China; and that ICON EV, not Lvtong, determined the carts' final destination. His deposition testimony showed that Lvtong shipped around 3,000 units to Texas from 2022 to 2024—out of 55,000 units sold to ICON EV overall—and more than 25,000 units to Lvtong USA, an unaffiliated Dallas-based company, over the same period. Song acknowledged traveling to Texas "once or twice" in both 2023 and 2024 to "maintain or improve" Lvtong's relationship with clients, including ICON EV.

The Rowton parties responded to the special appearance, pointing to the thousands of golf carts Lvtong shipped to Texas and to Song's Texas visits as evidence of purposeful availment.

**2.3    Analysis**

We would hardly be the first court in modern Texas jurisprudence to hold that contacts of this sort are insufficient to establish personal jurisdiction. The Texas Supreme Court has twice held, within just the past year, that a foreign manufacturer's shipment of a product into Texas—without more—does not establish purposeful availment, even when that product later causes injury here. *See BRP-Rotax*, 716 S.W.3d at 105; *Hyundam*, 716 S.W.3d at 173.

The evidence shows that Lvtong manufactured golf carts for ICON EV that were shipped FOB[1] from China, meaning responsibility for the carts passed to ICON EV in China rather than at the final destination. All manufacturing and design work occurred in China. Lvtong had no physical presence in Texas and never registered to transact business in Texas.

And the evidence does not show that Lvtong created, controlled, or employed the distribution system which brought the carts to Texas. The manufacturing contract with ICON EV obligates Lvtong to deliver carts to "the port designated on the Purchase Order"—a destination ICON EV unilaterally selects—and ICON EV markets the product under its own brand. This contract does not mention Texas.

Lvtong thus shipped its products, and subsequently replacement parts, to ports designated by its U.S. buyer and played no role in deciding where those products would ultimately be distributed or sold. *See CMMC v. Salinas*, 929 S.W.2d 435, 436, 439 (Tex. 1996) (no purposeful availment where French manufacturer shipped FOB to port of Houston at independent distributor's direction); *see also Jiangsu Gen. Sci. Tech. Co., Ltd. v. Sanchez*, No. 01-23-00894-CV, 2025 WL 2485680, at \*5 (Tex. App.—Houston [1st Dist.] Aug. 29, 2025, no pet.) (mem. op.) (no purposeful availment where foreign tire supplier had no responsibility or say in distribution or marketing in Texas). This arrangement mirrors the arm's-length supplier relationship that was insufficient to show purposeful availment in *BRP-Rotax* and falls short of the sales-agent arrangement that supported purposeful availment in *Asahi*. *See BRP-Rotax*, 716 S.W.3d at 111 (defendant "contracted with a distributor that in turn had wide discretion" in determining where engines would

---

[1] "FOB" is a UCC/international trade term describing when and where goods are delivered and the sale is considered complete. *See Spencer Gifts, Inc. v. Bullock*, 766 S.W.2d 593, 598 (Tex. App.—Austin 1989, no writ) (discussing the meaning of "FOB" under the UCC). According to Lvtong's affidavit, the cart was shipped "FOB Shanghai," meaning Lvtong was responsible only for delivering the cart to the buyer's chosen carrier in Shanghai; once the carrier took possession, the buyer assumed all responsibility for shipment.

ultimately end up); *Asahi*, 480 U.S. at 112 (defendant marketed products through a distributor that "agreed to serve as the sales agent in the forum State").

The evidence shows that, rather than targeting the Texas market, Lvtong intended to manufacture golf carts for independent distributors located around the world and that "Texas is only one of the locations" that it has shipped carts to in the United States. The volume of carts shipped to Texas—around 5,000 to ICON EV, according to the Rowton parties—reflects only the distributor's unilateral decisions, not Lvtong's purposeful efforts to serve the Texas market. *See Hyundam*, 716 S.W.3d at 173. And the record lacks the necessary context to gauge how large a percentage of sales this comprised. *See THD S.p.A. v. Pegg*, No. 02-24-00490-CV, 2025 WL 2177387, at *7 (Tex. App.—Fort Worth July 31, 2025, no pet.) (mem. op.) (finding no purposeful availment where there was no evidence of the percentage of total revenue derived from Texas sales "as compared to the broader United States market").

In reaching our conclusion, we do not weigh Lvtong's contacts in isolation. We assess the quality and nature of its Texas contacts as a whole. *See Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 339 (Tex. 2009) (minimum-contacts analysis focuses on "the quality and nature of the defendant's contacts, rather than their number"). But the contacts we consider are Lvtong's own—not the unilateral activity of a third party. *See Hyundam*, 716 S.W.3d at 173. Because Lvtong exercised no control over ICON EV, Lvtong USA, or any other entity that brought its carts here, the shipments those distributors directed to Texas are not Lvtong's contacts. Viewed as a whole, then, the record reveals only one set of Texas contacts attributable to Lvtong: Song's visits.

Even assuming those visits—"once or twice" in 2023 and 2024 to "maintain or improve" client relationships—show purposeful availment, they cannot alone establish specific jurisdiction. There must also be a substantial connection between the defendant's forum contacts and the operative facts of the litigation. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007).

Montague and the Rowton parties allege that Lvtong negligently designed a golf cart and failed to warn about or remedy its defects. Those allegations bear on "the operative facts of the litigation," since in a product-liability case, the "ultimate[] focus [is] on whether the product was unreasonably dangerous when it left the manufacturer's possession." *Semperit Technische Produkte Gesellschaft M.B.H. v. Hennessy*, 508 S.W.3d 569, 583 (Tex. App.—El Paso 2016, no pet.). While "a strict causal relationship between the defendant's in-state activity and the litigation" is not necessary, *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 592 U.S. 351, 362 (2021), the claims must still "arise out of or relate to" the defendant's forum contacts, *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (citation modified).

As relevant here, the record establishes only that Song traveled to Texas to maintain or improve relationships with clients, including a lunch with ICON EV's COO. The record does not show how those visits connect to this litigation. This case is thus unlike *Luciano*, where the record showed that the defendant "intended to serve a Texas market for the insulation that the [plaintiffs] allege injured them." 625 S.W.3d at 17; *see also Moki Mac*, 221 S.W.3d at 585–88 (holding that advertising and promotional activity in Texas was "simply too attenuated" from river-rafting death in Arizona). Montague and the Rowton parties also point to the scale of Lvtong's business reaching Texas, but scale cannot supply what this record lacks: evidence that Lvtong created, controlled, or

employed the distribution system that brought its carts to Texas. *See BRP-Rotax*, 716 S.W.3d at 108 ("*Targeting Texas* remains the touchstone."). Without that link, volume alone cannot create personal jurisdiction. *See World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980) (foreseeability that a product will reach the forum state, without more, is insufficient); *BRP-Rotax*, 716 S.W.3d at 108 (rejecting reliance on the number of engines registered in Texas as a substitute for evidence that the defendant targeted the Texas market).

We conclude the jurisdictional evidence, viewed as a whole, does not establish that Lvtong targeted Texas or engaged in additional conduct evincing an intent to serve the Texas market. We further conclude that, even assuming Song's visits to Texas show purposeful availment, the operative facts of this suit do not arise out of or relate to those Texas contacts. The evidence is therefore legally insufficient to establish personal jurisdiction. Lvtong's second, third, and fourth issues are sustained.[2]

## CONCLUSION

We reverse the trial court's order denying Lvtong's special appearance and render judgment dismissing the claims against Lvtong for lack of personal jurisdiction.

Velia J. Meza, Justice

---

[2] Because we conclude that the special appearance should have been granted, we need not address Lvtong's alternative arguments. *See* TEX. R. APP. P. 47.1.